ROBERT J. YORIO (SBN 93178)
yorio@carrferrell.com
COLBY B. SPRINGER (SBN 214868)
cspringer@carrferrell.com
CHRISTINE S. WATSON (SBN 218006)
cwatson@carrferrell.com
CARR & FERRELL *LLP*
2200 Geng Road
Palo Alto, California 94303
Telephone: (650) 812-3400
Facsimile:  (650) 812-3444

Attorneys for Plaintiff
ACTICON TECHNOLOGIES LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ACTICON TECHNOLOGIES LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>PRETEC ELECTRONICS CORPORATION, a dissolved California corporation; PTI GLOBAL, INC., a California corporation; CHIU FENG CHEN, an individual; GORDON YU, an individual; TOMMY HO, an individual; ROBERT WU, an individual; GRACE YU, an individual; KUEI LU, an individual; and DOES 1 through 20,<br><br>        Defendants. | CASE NO. C 07-4507 JF (HRL)<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF ACTICON TECHNOLOGIES LLC'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:        November 9, 2007<br>Time:        9:00 a.m.<br>Judge:       Hon. Jeremy Fogel<br>Courtroom:   3, Fifth Floor |

{00268367v1}

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ...................................................................................................... 1

      A.    ACTICON has Demonstrated A Likelihood Of Success And The
            Possibility Of Irreparable Injury. ............................................................. 2

            i.    ACTICON is likely to succeed on its patent infringement
                  claims. ............................................................................................ 2

            ii.   ACTICON is likely to succeed on its improper dissolution
                  claim. .............................................................................................. 4

            iii.  ACTICON is likely to succeed on its fraudulent transfer
                  claim. .............................................................................................. 4

            iv.   If the status quo is not preserved pending the outcome of
                  this litigation, ACTICON will likely suffer irreparable
                  harm. ............................................................................................... 7

      B.    ACTICON Met The Service Requirements Of The Federal And
            Local Rules Relating To Ex Parte Applications For Temporary
            Restraining Orders. .................................................................................... 8

      C.    A $500,000 Bond is Inappropriate. ........................................................... 8

III.  ADDITIONAL FACTS EVIDENCING THE NEED FOR INJUNCTIVE
      RELIEF ............................................................................................................... 9

      A.    ACTICON Has Set Forth Sufficient Evidence That It Will Suffer
            Irreparable Harm If The Injunction Does Not Issue. .............................. 11

IV.   CONCLUSION ................................................................................................. 13

# TABLE OF AUTHORITIES

**CASES**

*Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521 (9th Cir. 1984)...................................2

*Blank v. Olcovich Shoe Corp.*, (1937) 20 Cal.App.2d 456 ........................................................6

*Economy Refining & Service Co. v. Royal Nat. Bank of New York* (1971) 20
     Cal.App.3d 434, 67 P.2d 376 ........................................................................................5, 6

*Roe v. Anderson*, 134 F.3d 1400, 1401-02 (9th Cir. 1998) ........................................................2

**STATUTES**

35 U.S.C. §271(a).........................................................................................................1, 3

Civil Code §3439.04 ....................................................................................................4

# I.    INTRODUCTION

On October 15, 2007, the Court denied the Ex Parte Application for Temporary Restraining Order of Plaintiff Acticon Technologies LLC ("ACTICON") and set a hearing date of November 9, 2007, at 9:00 a.m., for ACTICON's Motion for Preliminary Injunction ("motion"). *See* Order, dated October 15, 2007 (Docket Entry 16). ACTICON hereby submits its supplemental brief in support of its motion in accordance with the Court's Order.

Similarly to its predecessor PRETEC's conduct in past and present litigation, PTI GLOBAL's Opposition employs tactics of avoidance and evasion, including the submission of inaccurate facts to the Court. More importantly, PTI GLOBAL's Opposition does not rebut, or even address, the issue of whether ACTICON is likely to suffer irreparable injury. Rather, PTI GLOBAL merely contends that ACTICON "collects royalties from many corporations" so "its damages can be measured by money." PTI GLOBAL's Opposition, at 7:14-17. On this ground alone, the Court should grant ACTICON's motion since ACTICON has made a sufficient showing of the likelihood of irreparable harm if the status quo is not preserved.

In addition, PTI GLOBAL's arguments regarding ACTICON's likelihood of success on the merits are equally inadequate and unpersuasive. PTI GLOBAL simply asserts that it is not a manufacturer of infringing products. The distinction PTI GLOBAL attempts to draw between PTI GLOBAL as an alleged distributor as opposed to a manufacturer of PRETEC branded products is wholly irrelevant to its liability for patent infringement because a company is liable if it makes, uses, offers to sell or sells infringing products. *See* 35 U.S.C. §271(a). PTI GLOBAL's own admission that it is a distributor of PRETEC products greatly enhances the likelihood of ACTICON's success on the merits of its Complaint if the PRETEC products infringe on the Patents-in-Suit.

# II.    ARGUMENT

As the Court's Order dated October 15, 2007 recognizes, "a party seeking a preliminary injunction must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of the hardships tipping in the movant's favor. *Roe v. Anderson*, 134 F.3d 1400, 1401-02 (9th Cir.

1   1998); *Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521, 523 (9th Cir. 1984).  These

2   formulations represent two points on a sliding scale in which the required degree of irreparable

3   harm increases as the probability of success decreases."  Order, at 3:5-9 (Docket Entry 16).

4         ACTICON has met its burden to show that it is likely to succeed on the merits of its

5   fraudulent transfer of assets and improper dissolution claims as well as its patent infringement

6   claims.  Based on PRETEC's questionable conduct in previous litigation as described more fully in

7   ACTICON's motion and Section III below and based on the relationship between PTI GLOBAL

8   and PRETEC, there are serious questions going to the merits of ACTICON's claims and the

9   balance of the hardships clearly tips in ACTICON's favor.

10  **A.    ACTICON has Demonstrated A Likelihood Of Success**
11  **       And The Possibility Of Irreparable Injury.**

12        **i.    ACTICON is likely to succeed on its patent infringement claims.**

13        As described in the Complaint and in ACTICON's motion, the Patents-in-Suit, entitled

14  "Connector Interface" ('320 Patent), "Integrated Connector and Modem" ('450 Patent)

15  "Programmable Connector" ('470 Patent) and "Multiple Connector Interface" ('506 Patent),

16  involve various electronic connectors that convert signals between a computer and certain external

17  devices in order to obtain a desired connecting configuration and/or function.  Complaint, at ¶¶42-

18  46.

19        The Complaint further alleges that "prior to on or about November 28, 2006, PRETEC

20  made, used, imported, distributed, offered for sale and/or sold certain products in the United States

21  that infringe upon the Patents-in-Suit, including, but not limited to, CompactFlash form factor I/O

22  devices such as Ethernet and Modem cards, Secure Digital form factor I/O devices such as the

23  Whanto Modem, PCMCIA form factor devices such as Ethernet, Modem and Combo cards, as well

24  as other CompactFlash, SDIO and PCMCIA form factor devices which may be further identified

25  during the course of discovery."  *Id.*, at ¶47.  These products constitute the "Accused Products" in

26  this case.  Many of the products available on PRETEC's and PTI GLOBAL's web sites, as well as

27  PTI GLOBAL's online storefront in Amazon.com's marketplace represent Accused Products, such

28  as the PRETEC brand CompactFlash cards and PCMCIA cards sold by PTI GLOBAL, which are

1   products involving electronic connectors that convert signals between a computer and external

2   devices in order to obtain desired connecting configurations and/or functions.  *See* Exhibit I to

3   Watson Decl. (Docket Entry 9).

4        PTI GLOBAL's liability with respect to the patent infringement claims turns on whether

5   PTI GLOBAL manufactures, distributes, offers to sell or sells infringing products.  Whether PTI

6   GLOBAL is a manufacturer as opposed to a distributor of infringing products, which PTI

7   GLOBAL contends in its Opposition, is irrelevant to the Court's determination of whether

8   ACTICON will prevail on the merits of its patent infringement claims.  Section 271(a) of Title 35

9   of the United States Code states, "Except as otherwise provided in this title, whoever without

10  authority makes, uses, offers to sell, or sells any patented invention, within the United States or

11  imports into the United States any patented invention during the term of the patent therefor,

12  infringes the patent."  35 U.S.C.§ 271(a).

13       Since PTI GLOBAL unquestionably sells PRETEC brand electronic connector products –

14  and has admitted as much – the only other inquiry before the Court relates to the validity of the

15  Patents-in-Suit.  The strength of ACTICON's patents, however, has been proven in a number of

16  legal actions resolved in ACTICON's favor, in which the accused infringers entered into license

17  agreements for the Patents-in-Suit.  To date, ACTICON has obtained over 145 licenses involving at

18  least one of the Patents-in-Suit.

19       In addition, the '470 and '320 Patents enjoy a strong presumption of validity based on

20  successful re-examinations by the United States Patent & Trademark Office.  S*ee* Ex Parte Re-

21  Examination Certificate for U.S. Patent No. 4,972,470 and Ex Parte Re-Examination Certificate for

22  U.S. Patent No. 4,603,320, attached as Exhibit A to the Supplemental Declaration of Christine S.

23  Watson ("Supp. Watson Decl.")  In the re-examination prosecution for the '470 Patent, 114 U.S.

24  patents, 8 foreign patents and 27 printed articles were considered, in addition to the art previously

25  submitted during the original prosecution, and the '470 Patent was reissued without amendment.  *Id.*

26  The '320 Patent also received a Re-Examination Certificate.  *Id.*

27

28

1
ii.    **ACTICON is likely to succeed on its improper dissolution claim.**

2
PTI GLOBAL's Opposition fails to address the issue of ACTICON's likelihood of success

3
on its improper dissolution claim.  Based on the facts presented in ACTICON's motion, ACTICON

4
has demonstrated a likelihood of success on this claim and the Court should find in ACTICON's

5
favor on this issue.

6
After PRETEC's default had already been entered in *Pretec I* and despite the fact that the

7
Court had granted PRETEC a continuance for the opportunity to seek counsel, PRETEC filed a

8
Certificate of Dissolution.  Watson Decl., at ¶14; *see* Exhibit G attached to Watson Decl. (Docket

9
Entry 9).  Not only did PRETEC file for dissolution while litigation was still pending against it and

10
its default had been entered, but Defendant CHIU FENG CHEN certified and declared under

11
penalty of perjury in the Certificate of Dissolution that, *inter alia*, "THE CORPORATION'S

12
KNOWN DEBTS AND LIABILITIES HAVE BEEN ACTUALLY PAID."  Watson Decl., at ¶14.

13
In addition to filing a false Certificate of Dissolution with the California Secretary of State,

14
PRETEC failed to cease its operations and continued to do business as PTI GLOBAL in the same

15
location, under the same brand name and from the same web site.  PTI GLOBAL even shared the

16
same officers and directors as PRETEC until at least December 5, 2006.  *See* Exhibit O to Watson

17
Decl.  (Docket Entry 9).

18
iii.    **ACTICON is likely to succeed on its fraudulent transfer claim.**

19
Civil Code §3439.04(a) provides that

20
"A transfer made or obligation incurred by a debtor is fraudulent as to a
creditor, whether the creditor's claim arose before or after the transfer was

21
made or the obligation was incurred, if the debtor made the transfer or
incurred the obligation as follows:

22
(1)    With actual intent to hinder, delay, or defraud any creditor of the
debtor.

23
(2)    Without receiving a reasonably equivalent value in exchange for

24
the transfer or exchange for the transfer or obligation, and the
debtor:

25
(A)    Was engaged or was about to engage in a business or a transaction
for which the remaining assets of the debtor were unreasonably
small in relation to the business or transaction; or

26
(B)    Intended to incur, or believed or reasonably should have believed

27
that he or she would incur, debts beyond his or her ability to pay as
they became due."

28

Supplemental Brief ISO Plaintiff Acticon Technologies LLC's Motion for Preliminary Injunction
C 07-4507 JF (HRL)

1   In this case, the improper filing of PTI GLOBAL's Motion to Change Time, especially in

2   the context of PRETEC's/PTI GLOBAL's conduct in *Pretec I*, *Sandisk Corp. v. Memorex*

3   *Products, Inc.*, Case No. 01-4063 VRW and *Lexar Media, Inc. v. Pretec Electronics Corp.*, Case

4   No. 00-4770 MJJ, described below in Section III, provides evidentiary support for ACTICON's

5   allegations that PRETEC and the other defendants in this case fraudulently transferred PRETEC's

6   assets to PTI GLOBAL with the intent to hinder, delay or defraud ACTICON in pursuing its claims

7   arising out of the FIRST COMPLAINT against PRETEC.

8   Furthermore, PTI GLOBAL **admits** in its Opposition and supporting declarations that PTI

9   GLOBAL never received any "funding" from PRETEC, which further substantiates ACTICON's

10  allegations that PRETEC and the other defendants in this action "transferred PRETEC's assets to

11  PTI GLOBAL, INC. without receiving a reasonably equivalent value in exchange for the transfer

12  and were engaged in a transaction (or series of transactions) for which its remaining assets were

13  unreasonably small in relation to the transactions.  Complaint, at ¶87.  Evidence of the fact that

14  PRETEC possessed remaining assets unreasonably small in relation to the transaction is

15  demonstrated by virtue of the fact that the corporation dissolved.

16  In *Economy Refining & Service Co.*, (1971) 20 Cal.App.3d 434, 97 Cal.Rptr. 706, the court

17  considered the fact that the debtor did not receive any consideration in return for the transfer of all

18  of its assets in determining the issue of fraudulent conveyance.  *Economy Refining & Service Co.*,

19  20 Cal.App.3d, at 441.  In that case, the corporation making the fraudulent conveyance did not

20  dissolve, as PRETEC did, and the court noted that if the corporation "had [dissolved], its assets

21  would have been subject to the claims of creditors," which constitutes evidence supporting a

22  finding of fraudulent conveyance.  *Id.*

23  Additionally, PTI GLOBAL and the individual defendants cannot escape liability based

24  merely on the fact that PTI GLOBAL and PRETEC have different names.  "Transfers of all of the

25  assets of a person or corporation in straitened circumstances, without fair consideration, to a

26  corporation having substantially the same ownership, by which the just claims of creditors are

27  defeated, are of such fraudulent nature that the new corporation may be held to the debt of the old."

28

1   *Economy Refining & Service Co. v. Royal Nat. Bank of New York* (1971) 20 Cal.App.3d 434, 439,

2   67 P.2d 376. In *Blank v. Olcovich Shoe Corp.*, (1937) 20 Cal.App.2d 456, the court recognized that

> "there is an abundance of authority to support the claim that under
> certain circumstances **corporations cannot escape liability by a mere
> change of name or a shift of assets when and where it is shown that
> the new corporation is, in reality, but a continuation of the old**.
> Especially is this well settled when actual fraud or the rights of
> creditors are involved, under which circumstances the courts
> uniformly hold the new corporation liable for the debts of the former
> corporation (citations omitted).    *Blank*, at 461; *see* 9 Witkin,
> *Taxation, Partnership, Corporations* (10th ed.), at §16 ("**If a
> corporation organizes another corporation with practically the same
> shareholders and directors, transfers all the assets but does not pay
> all of the first corporation's debts, and continues to carry on the
> same business, the separate entities may be disregarded and the new
> corporation held liable for the obligations of the old**"); *see also Shea
> v. Leonis* (1939) 14 Cal.2d 666, 669.

11      As argued in ACTICON's moving papers, the facts in this case demonstrate that PTI

12  GLOBAL is a mere continuation of PRETEC. Although PRETEC filed a (false) Certificate of

13  Dissolution, PTI GLOBAL carries on the same business that PRETEC was engaged in prior to

14  PRETEC's dissolution. *See* ACTICON's Motion, at 5:13-6:24. The Defendants in this case did

15  continue the business of PRETEC, but without making any arrangements to pay for PRETEC's

16  patent infringement debt to ACTICON. Under California creditor/debtor law, these facts warrant a

17  finding that PTI GLOBAL should be held responsible for the patent infringement liability of

18  PRETEC. *Economy Refining & Service Co., supra*, 20 Cal.App.3d at 439.

19      In addition, PTI GLOBAL was listed on PRETEC's web site as PRETEC's United States

20  headquarters[1]; PTI GLOBAL is the registrant of www.pretec.com; PTI GLOBAL sells virtually

21  only PRETEC products on its web sites and online storefronts; PTI GLOBAL occupies the same

22  physical space that PRETEC previously occupied; and PTI GLOBAL has shared several of the

---

[1]   The fact that PRETEC's web site was changed to delete this information ***just days after***
ACTICON filed the instant motion only strengthens ACTICON's argument that PTI GLOBAL
is the successor corporation to PRETEC. The alteration of PRETEC's web site only after
notice of ACTICON's motion creates a strong inference of a relationship between the two
entities. PRETEC's and PTI GLOBAL's audacity in providing the Court with misleading
information suggesting that PRETEC's web site never stated that PTI GLOBAL was
PRETEC's United States headquarters is exemplary of PRETEC'S/PTI GLOBAL's disrespect
for the Court and legal process and is consistent with PRETEC's continuous pattern of
fraudulent conduct in this case and others.

1  same officers and/or directors with PRETEC. *See* ACTICON's Motion, at 5:13-6:24. Despite PTI

2  GLOBAL's argument that its only officer/director is KUEI LU, the Statements of Information that

3  Pretec Technology, Inc./PTI GLOBAL filed with the California Secretary of State demonstrate that

4  until at least December 2006 (after PRETEC filed for dissolution), Defendants TOMMY HO and

5  ROBERT WU were officers, directors and/or majority shareholders of both PRETEC and PTI

6  GLOBAL. Exhibit O to Watson Decl. (Secretary of State Statements of Information) (Docket

7  Entry 9).

8        Based on this evidence, ACTICON will likely prove that PRETEC transferred substantially

9  all of its assets to PTI GLOBAL, INC., that PTI GLOBAL, INC. did not pay PRETEC's debts or

10 liabilities and that PTI GLOBAL, INC. carries on the same business as PRETEC conducted prior to

11 PRETEC's dissolution.

12

13        iv.    **If the status quo is not preserved pending the outcome of this litigation, ACTICON will likely suffer irreparable harm.**

14        The latest filing by PTI GLOBAL in the instant case is consistent with PRETEC/PTI

15 GLOBAL's pattern of inappropriately misleading the Court and flagrantly disobeying Court orders

16 without regard to the consequences. Moreover, PTI GLOBAL's Motion to Change Time

17 strengthens ACTICON's argument that it will likely suffer irreparable harm if PTI GLOBAL is not

18 enjoined from transferring its assets pending the outcome of this litigation. Like Tommy Ho,

19 Operations Manager for PRETEC (who also happens to have been listed as an officer and/or

20 director of Pretec Technology, Inc. before it changed its name to PTI GLOBAL), Chi-Lin Tom,

21 General Manager of PTI GLOBAL, contacted counsel for ACTICON in a feigned attempt to "start

22 the conversation." E-mail dated October 12, 2007, attached as Exhibit D to Supp. Watson Decl.

23        Given PRETEC's/PTI GLOBAL's track record, it is likely PRETEC/PTI GLOBAL is

24 engaging in the same tactic it successfully utilized with counsel for ACTICON prior to dissolving

25 PRETEC and fraudulently transferring its assets to PTI GLOBAL and without any intention of

26 participating in its defense of the case or any required court processes. Neither PRETEC nor PTI

27 GLOBAL has exhibited any conduct which would lead the Court to believe that they will observe

28

1   the strictures of legal and court processes.  A preliminary injunction pending the outcome of this

2   case is vital to ensure the protection of ACTICON's interests.

3

4   **B.      ACTICON Met The Service Requirements Of The Federal And Local Rules**
        **Relating To Ex Parte Applications For Temporary Restraining Orders.**

5          PTI GLOBAL's contention that ACTICON failed to meet the requirements of Civil Local

6   Rule 65-1 is completely baseless.  ACTICON fully complied with L.R. 65-1's notice requirements.

7   Counsel for ACTICON faxed notice to PTI GLOBAL on October 4, 2007, the day before it filed

8   the Ex Parte Application and Motion and attempted to serve all defendants in this case.  Watson

9   Decl., at ¶20 (Docket Entry 9); Letter from Robert Yorio to Linda Shao, dated October 11, 2007,

10  attached to Supp. Watson Decl. as Exhibit C.  Despite multiple diligent attempts, ACTICON has

11  been unable to serve any other defendants besides PTI GLOBAL.  ACTICON is not required to

12  provide notice to parties who are purposely evading service.  It is not clear why PTI GLOBAL is

13  concerned with notice on the individual defendants and PRETEC since PTI GLOBAL claims it is

14  not related to PRETEC in any way and claims that the only officer and/or director of PTI GLOBAL

15  is Defendant KUEI LU.

16         The reason for PTI GLOBAL's concern over C-One Technology Corporation ("C-One") is

17  also unclear.  C-One is the parent company of PRETEC; if PTI GLOBAL is not related to

18  PRETEC, then whether ACTICON has named C-One as a defendant in this case is completely

19  irrelevant.  The fact that PTI GLOBAL independently brings C-One to the Court's attention in

20  combination with the fact that the attorney who initially contacted counsel for ACTICON on behalf

21  of **PTI GLOBAL**with respect to this motion, Leodis Matthews, was counsel for **PRETEC** in

22  *Sandisk* and counsel for **C-One** in *Lexar Media,* heightens the probability of a successor

23  relationship between PTI GLOBAL and PRETEC.

24  **C.      A $500,000 Bond is Inappropriate.**

25         A bond of more than $5,000 is not appropriate in this case and the $500,000 bond proposed

26  by PTI GLOBAL is utterly excessive.  Should the preliminary injunction issue, PTI GLOBAL's

27  business will not be adversely affected in terms of its conduct of daily business.  The proposed

28  injunction is tailored to prohibit the transfers of PTI GLOBAL's assets to any third parties,

1  including the individual defendants in this case, that do not ordinarily occur in the normal course of

2  business.  The proposed injunction does not seek the restraint of PTI GLOBAL's trade, even

3  though those sales may include sales of infringing products.  PTI GLOBAL has not set forth any

4  contradicting evidence on this point or evidence demonstrating what damages it would incur if the

5  injunction issued and therefore, the Court should require only a nominal bond in this case.

6  **III.    ADDITIONAL FACTS EVIDENCING THE NEED FOR INJUNCTIVE RELIEF**

7          On October 26, 2007, PTI GLOBAL filed a Motion to Change Time that is almost *identical*

8  to the Motion to Change Time filed on behalf of PRETEC in the related case, *Acticon Technologies*

9  *LLC v. Pretec Electronics Corporation, et. al.*, Case No. 06-4679 JF (HRL)  ("*Pretec I*").  *See*

10  Exhibits A and B to the Declaration of Christine Watson in support of Acticon's Opposition to PTI

11  Global, Inc.'s Motion to Change Time (Docket Entry 9).  Both the Motion to Change Time in the

12  instant case and the motion in *Pretec I* sought a continuance of an impending hearing date on the

13  premise that PRETEC/PTI GLOBAL required additional time to seek counsel.  *Id.*

14          In *Pretec I*, TOMMY HO, Operations Manager of Pretec, filed a Motion to Change Time

15  with respect to the Initial Case Management Conference ("CMC") date on behalf of PRETEC and

16  subsequently contacted counsel for Acticon to discuss possible resolution of the case.  Complaint,

17  at ¶¶31-33.  Prior to the date of the CMC, a company named Pretec Technology Inc. changed its

18  name to PTI Global, Inc. and PRETEC filed for dissolution.  PRETEC never appeared in the case,

19  never contacted opposing counsel and never notified the Court of its dissolution.

20          The fraudulent conduct that PRETEC displayed in *Pretec I* is part of a pattern of improper

21  and unlawful conduct exhibited by PRETEC in this case and at least two other cases filed in this

22  District.  In *Lexar Media, Inc. v. Pretec Electronics Corp., et. al.*, Civil Case No. 00-4770 MJJ (also

23  known as *Acclaim Innovations, Inc. v. Pretec Electronics Corp., et. al.*), Acclaim Innovations filed

24  a motion for entry of default and default judgment against PRETEC on the basis that in violation of

25  the court's order, PRETEC "failed to obtain counsel" and "has not made an appearance or attended

26  a status conference in this case since June 2006."  Acclaim Innovation LLC's Motion for Entry of

27  Default and Default Judgment by Acclaim Innovation, dated August 10, 2007, attached as Exhibit

28  E to Supp. Watson Decl.

1    In response, PRETEC filed a request for "'60 days to retain a new counsel'" in *Lexar*

2  *Media*, just as it did in *Pretec I* and the instant case. *Id.*, at 2:12-15. Completely consistent with its

3  longstanding pattern of conduct, PRETEC did not retain counsel, did not file responses ordered by

4  the court, including failing to respond to an order to show case, and did not appear for a court-

5  ordered status conference in *Lexar Media*. *Id.*, at 2:15-3:1. On August 13, 2007, the Clerk of Court

6  issued a Notice Vacating Motions Hearing on Acclaim Innovation's motion, which was originally

7  set for a hearing on August 14, 2007, and deemed the matter submitted on the papers. Clerk's

8  Notice Vacating Motions Hearing dated August 13, 2007, attached as Exhibit H to Supp. Watson

9  Decl.

10    In yet another Northern District case, *Sandisk Corp. v. Memorex Products, Inc.*, Civil Case

11  No. 01-4063 VRW, the court entered the default of PRETEC after "the law firm of Matthews &

12  Partners filed a request on Pretec's behalf 'to make a special appearance until a substitution of

13  attorney [could] be accomplished' and further request[ed] 'an extension of 5 business days, to and

14  including October 19, 2007, within which to file a response to the OSC," which was granted by the

15  court. Order filed October 24, 2007 in *Sandisk Corp. v. Memorex*, at 2:1-6, attached as Exhibit F to

16  Supp. Watson Decl. Again, PRETEC failed to comply with the court's order. *Id.* Consequently,

17  the court entered PRETEC's default in the *Sandisk* case on October 24, 2007 (Docket Entry 495).

18    The attorney who filed the request on behalf of **PRETEC** described above, Leodis

19  Matthews of the law firm Matthews and Partners, is the same attorney who contacted counsel for

20  ACTICON – this time on behalf of **PTI GLOBAL** – on October 5, 2007.[2] *See* Docket Entry 7; E-

21  mail dated October 5, 2007, attached as Exhibit B to Supp. Watson Decl. Mr. Matthews telephoned

22  counsel for ACTICON after having received notice of ACTICON's ex parte application and motion

23  from his client, PTI GLOBAL, through a Chi-Lin Tom. Supp. Watson Decl., at ¶2. Mr. Tom, who

24  allegedly is the General Manager of PTI GLOBAL, also appears to be the administrative contact

25  and technical contact of the domain name www.pretec.com, **PRETEC**'s web site, which is

26  

27  [2]  Mr. Matthews also appeared in the *Lexar Media* case on behalf of C-One Technology

28  Corporation, the parent company of PRETEC. Although PRETEC was a defendant in *Lexar Media*, Mr. Matthews apparently did not represent PRETEC in that matter.

1    registered by **PTI GLOBAL**.  *See* Exhibit G attached to Supp. Watson Decl; *See* Declaration of

2    Chi Lin Tom Supporting PTI Global, Inc.'s Opposition to Plaintiff's Ex Parte Motion for TRO

3    (Docket Entry 11).

4           Counsel for ACTICON never heard from Mr. Matthews after October 5, 2007.  Supp.

5    Watson Decl., at ¶3.  Although counsel for ACTICON sent Mr. Matthews an e-mail on October 10,

6    2007 requesting that Mr. Matthews clarify who represents PTI GLOBAL, after counsel for

7    ACTICON received a telephone call from Linda Shao, current counsel for PTI GLOBAL, Mr.

8    Matthews did not respond to that communication.  Supp. Watson Decl., at ¶4.

9

**A.    ACTICON Has Set Forth Sufficient Evidence That It Will Suffer Irreparable Harm If The Injunction Does Not Issue.**

10

11          PTI GLOBAL argues that ACTICON's motion is based on pure speculation; however, this

12    is not the case.  While ACTICON has not presented a written agreement between PRETEC and PTI

13    GLOBAL to engage in a conspiracy to fraudulently transfer PRETEC's assets to PTI GLOBAL and

14    then improperly dissolve PRETEC, this type of evidence is not required in order for ACTICON to

15    meet is burden.  As set forth in Section III herein and in ACTICON's motion, ACTICON has

16    presented a multitude of facts evidencing PRETEC's improper conduct.  In *Sandisk*, *Lexar*, *Pretec*

17    and the instant case, PRETEC has requested continuances to obtain counsel, failed to obtain

18    counsel and/or failed to make scheduled appearances as ordered by the court.  These actions in

19    addition to Pretec Technology, Inc. changing its name to PTI GLOBAL, the dissolution of

20    PRETEC and deletion of TOMMY HO and ROBERT WU from PTI GLOBAL's Statement of

21    Information within one single month's time all establish a pattern of conduct designed to evade

22    creditors' claims.

23          Additionally, PTI GLOBAL's own admission that it is the same corporation as Pretec

24    Technology, Inc. in addition to the timing of events prior to and during *Pretec I* provide substantial

25    support for the inference that PTI GLOBAL was a shell corporation formed by PRETEC and/or the

26    individual defendants for the sole purpose of transferring its assets in order to evade court process.

27          The relevant chronology of events is as follows:

28

| | | |
|---|---|---|
| 1 | *Sandisk* Complaint filed | October 2001 |
| 2 | PRETEC's Answer in *Sandisk* filed | December 12, 2001 |
| 3 | Pretec Technology, Inc. incorporated | January 4, 2002 |
| 4 | *Pretec I* filed | August 1, 2006 |
| 5 | PRETEC's Motion to Change Time in *Pretec I* | October 19, 2006 |
| 6 | Pretec Technology, Inc. renamed as PTI GLOBAL | October 27, 2006 |
| 7 | PRETEC files for dissolution | November 28, 2006 |
| 8 9 | PTI GLOBAL replaces TOMMY HO, ROBERT WU and other corporate officers and directors with KUEI LU. | December 5, 2006 |
| 10 | PTI GLOBAL web site registered | February 10, 2007 |

11  As demonstrated by the chronology above, Pretec Technology, Inc. was formed less than one

12  month after PRETEC appeared in the *Sandisk* matter.  Then, almost immediately after appearing in

13  *Pretec I*, Pretec Technology, Inc. changed its name to PTI GLOBAL and shortly thereafter,

14  PRETEC filed for dissolution.

15      PTI GLOBAL's contention that PTI GLOBAL could not be the successor corporation of

16  PRETEC because PTI GLOBAL was incorporated prior to the date PRETEC dissolved is not

17  factually or legally supported and PTI GLOBAL's reasoning is illogical.  Whether Pretec

18  Technology, Inc./PTI GLOBAL was formed four years prior to the dissolution of PRETEC is

19  immaterial:  a company formed for the purpose of existing as a shell corporation need not – and

20  likely would not – be formed after or contemporaneously with the dissolution of the company from

21  which it will unlawfully receive assets.  In fact, the incorporation of PTI GLOBAL is entirely

22  consistent with the characteristics of a shell corporation.   PTI GLOBAL has not presented any

23  evidence demonstrating that Pretec Technology, Inc. ever engaged in any kind of business or

24  commerce prior to its being renamed PTI GLOBAL.

25      The foregoing additional facts provide additional support for ACTICON's position set forth

26  in Sections II(A)(i)-(iv) above.  These additional facts exemplify the Defendants' untrustworthiness

27  and inability, or unwillingness, to obey Court orders.  Accordingly, a finding of irreparable injury is

28  warranted and ACTICON respectfully submits that the Court should issue the preliminary

1   injunction requested.

2                           **IV.    CONCLUSION**

3       Based on the foregoing, ACTICON respectfully requests that the Court issue an order enjoining

4   and restraining DEFENDANTS, together with all of their officers, agents, servants, employees,

5   representatives, attorneys and assigns and all other persons, firms or companies in active concert or

6   participation with them from directly or indirectly:

7       a.      Transferring, selling, hypothecating or otherwise moving or removing any assets

8               (including cash and any other monetary sums) of Defendant PTI GLOBAL, INC. to the

9               DEFENDANTS or any defendant's parent companies, subsidiaries, officers, directors,

10              attorneys, agents, affiliates or anyone acting in concert with any defendant;

11      b.      Transferring, selling, hypothecating or otherwise moving or removing any of the

12              Accused Products to the DEFENDANTS or any defendant's parent companies,

13              subsidiaries, officers, directors, attorneys, agents, affiliates or anyone acting in concert

14              with any defendant; and

15      c.      Transferring, selling, hypothecating or otherwise moving or removing any assets

16              (including cash and any other monetary sums) of Defendant PTI GLOBAL, INC. to any

17              business entity or individual, except for the transferring, selling, moving or removing of

18              assets that ordinarily occurs in the normal course of business.

19

20                                          Respectfully submitted,

21  Dated:  November 2, 2007               CARR & FERRELL *LLP*

22

23                                  By:  /s/ Christine S. Watson
                                        ROBERT J. YORIO
                                        COLBY B. SPRINGER
24                                      CHRISTINE S. WATSON

25                                      Attorneys for Plaintiff
                                        ACTICON TECHNOLOGIES LLC

26

27

28